1

2

3

4

5

6

7

8

9 # UNITED STATES DISTRICT COURT

10 ## EASTERN DISTRICT OF CALIFORNIA

11 RONNIE L. GREASHAM                )   1:08cv01204 GSA
                                    )
12                                  )
                                    )   ORDER REGARDING PLAINTIFF'S
13                   Plaintiff,     )   SOCIAL SECURITY COMPLAINT
                                    )
14      v.                          )
                                    )
15 MICHAEL J. ASTRUE, Commissioner  )
   of Social Security,             )
16                                  )
                                    )
17                   Defendant.     )
   _____ )

18

19

## BACKGROUND

20

21      Plaintiff Ronnie L. Greasham ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying his application for disability

22 insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social

23 Security Act.  The matter is currently before the Court on the parties' briefs, which were

24 submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate

25 Judge. [1]

26

27

28      [1] The parties consented to the jurisdiction of the United States Magistrate Judge. On August 5, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

1

2                    **FACTS AND PRIOR PROCEEDINGS**[2]

3          On September 15, 2005, Plaintiff filed applications for disability insurance benefits and

4   supplemental security income, alleging disability since August 1, 1997, due to heart problems,

5   arthritis, right knee and elbow problems, back pain, eye problems, muscle spasms, depression,

6   chronic pain, rheumatoid arthritis, angina equivalent pain, shortness of breath, weakness and

7   dizziness.  AR 10, 30, 76-77.  The applications were denied initially and upon reconsideration.

8   AR 10.  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  AR 10.

9   ALJ Stephen W. Webster issued an order denying benefits on January 11, 2008.  AR 7, 19.  On

10  March 19, 2008, the Appeals Council denied review.  AR 3.

11         Hearing Testimony

12         The Plaintiff filed a timely written request for a hearing on May 10, 2007. However, on

13  July 10, 2007, Plaintiff knowingly and voluntarily waived the right to personally appear and

14  testify at the hearing. AR 10, 20.

15         Medical Record

16         The record consists of numerous reports from Truxton Radiology Medical Group,

17  Sagebrush Family Practice, and the Kern Medical Center (KMC) covering Plaintiff's diagnoses

18  and treatments beginning February 2, 1999, and ending March 3, 2007. AR 79, 106-349.

19         Plaintiff reported a history of hypertension and valvular heart disease. Reports from KMC

20  dated April 8, 2003, evidenced mild mitral regurgitation and mild tricuspid regurgitation. AR

21  189-190. Plaintiff had been prescribed medication to control his hypertension. AR 194.

22         X-rays taken of the left hand in January, 2004, at KMC, showed some peri-articular

23  erosion at the left third and fifth metacarpophalangeal joint, suggestive of inflammatory arthritis.

24  AR 211.

25         In response to Plaintiff's allegations of back pain, Dr. Ghadiya R. Mansukh, M.D.,

26  ordered a radiological examination of the lumbosacral spine at KMC on March 18, 2005. AR

27  ─────────────────

28      [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page
        number.

1   243. Dr. Parviz Massarat, M.D., reviewed the report but found no evidence of fracture or

2   dislocation, and also found that both sacroiliac joints were well preserved. AR 243.

3       Plaintiff also has several orthopedic complaints. Although he reported back pain, lumbar

4   x-rays taken March 21, 2005, at KMC were normal. AR 243.

5       On June 10, 2005, Plaintiff visited KMC complaining of chronic elbow pain and blurry

6   vision. The vision problem was attributed to a refractive error. AR 244. On July 21, 2005,

7   Plaintiff reported pain in his right elbow and right knee. AR 254. A subsequent radiological

8   examination conducted on July 21, 2005, at KMC by Dr. Chester K. Lau, M.D., revealed that

9   there was no recent fracture or osteolytic lesion of the right knee. Additionally, the right knee

10  joint space was found to be normal, and no right knee effusion was observed. AR 250.

11      Laboratory tests run at KMC in August 2005, revealed a positive rheumatoid factor and

12  anti-nuclear antibody. Plaintiff was subsequently diagnosed with rheumatoid arthritis. AR 267,

13  270.

14      Plaintiff also has a history of gastric problems. On September 6, 2005, Plaintiff

15  underwent an esophagogastroduodenoscopy with biopsy at KMC. In a procedure note dated

16  September 6, 2005, Dr. Ishaan Kalha, M.D., reported his findings as follows: distal esophagitis,

17  grade 2, irregular squamocolumnar junction, moderate gastritis in the antrum, normal-appearing

18  gastric cardia and gastric fundus, moderate duodenitis in the bulb of the duodenum, but normal-

19  appearing second and third portions. AR 271.

20      On February 18, 2006, Dr. Emanuel Dozier, M.D., conducted a comprehensive internal

21  medicine evaluation of Plaintiff in Bakersfield, California. AR 336. Dr. Dozier noted Plaintiff

22  had a history of essential hypertension, controlled rheumatoid and gouty arthritis, peptic ulcer

23  disease, valvular heart disease, and chronic mechanical low back pain. Dr. Dozier ruled out

24  irritable bowel syndrome. AR 341. Dr. Dozier also performed a functional assessment. Based on

25  this examination, he found that Plaintiff would have no postural or manipulation restrictions, and

26  would not have any special sense or environmental restrictions. AR 341. Dr. Dozier also opined

27  that Plaintiff would be able to lift and carry fifty pounds occasionally, and twenty-five pounds

28

frequently, and that he would be able to stand, walk and/or sit for six hours in an eight-hour workday. AR 341.

On February 20, 2006, Dr. Ina Shalts, M.D., conducted a comprehensive psychiatric evaluation of Plaintiff in Bakersfield, California, pursuant to a referral from the Social Security Administration. AR 342. Plaintiff reported a history of depression and said he felt depressed due to his physical problems. Plaintiff said that he felt sad, slept poorly and did not want to be bothered by anybody. AR 16, 342. Plaintiff reported that he watched televison all night, and felt tired all the time. AR 16, 342. Plaintiff also reported multiple physical problems as being the reason for his inability to work. AR 16. Plaintiff stated that his daily activities were restricted because of his physical problems and that he had some difficulty with social functioning. Dr. Shalts diagnosed Plaintiff as suffering from a mood disorder secondary to general medical condition, and noted that he had a history of learning disability based on his own report, and that he had chronic back pain, rheumatoid arthritis, high blood pressure, heart disease, and chronic pain. She also assigned a Global Assessment of Functioning ("GAF") score of 55.[3] AR 344-345. Dr. Shalts determined that Plaintiff had some difficulty with concentration, persistence, and pace, but that he would be able to understand, remember, and carry out simple instructions and would be able to respond to coworkers, supervisors, the public, and to usual work situations. AR 17, 349.

On May 10, 2006, Dr. Harvey Biala, M.D., a nonexamining state agency psychiatrist, reviewed Plaintiff's medical record and recommended that further RFC assessments were necessary. Dr. Biala also reported coexisting non-mental impairments that required referral to another medical specialty. AR 92. He diagnosed Plaintiff with an affective disorder and also noted that Plaintiff had mild restrictions of activities of daily living. Plaintiff also had moderate difficulties in maintaining social functioning, concentration, persistence or pace, and yet he had no episodes of decompensation. AR 102. Dr. Biala concluded that Plaintiff retained sufficient

---

[3] The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM IV"). A GAF between 51 and 60 indicates "[moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). DSM-IV at 34.

1  ability to understand and remember simple instructions, and that he had sufficient ability to carry

2  out short instructions, to perform activities without additional support and to maintain attention

3  in two-hour increments. AR 102, 108.

4      A physical residual functional capacity ("RFC") report prepared by Dr. John T. Bonner,

5  M.D., dated July 7, 2006, showed that Plaintiff could lift and carry fifty pounds occasionally,

6  twenty-five pounds frequently, could stand and/or walk for a total of about six hours in an eight-

7  hour workday, and could sit for a total of about six hours in an eight-hour workday. AR 85.

8  According to the assessment, Plaintiff retained an unlimited ability to push and/or pull. AR 86.

9  No postural limitations were established, and no manipulative, visual, communicative and

10  environmental limitations were noted. AR 87. However, Dr. Bonner did note that Plaintiff's

11  subjective complaints and limitations were not adequately supported by the medical evidence.

12  AR 89.

13      On July 13, 2006, Plaintiff visited KMC and was prescribed Ultracet in order to alleviate

14  pain in the left elbow. AR 289, 290. Treating notes from October 24, 2006, indicated that

15  Plaintiff had been seen in the emergency department for hip pain. AR 318.

16      On March 3, 2007, Dr. Marina C. Vea, M.D., a nonexamining state agency psychiatrist,

17  completed a functional capacity assessment of Plaintiff in which she noted that Plaintiff was

18  moderately limited in the ability to understand and remember detailed instructions, and that he

19  was moderately limited in the ability to carry out detailed instructions. AR 106. Based on her

20  review of all the evidence on file, and based on her reading of the report compiled by Dr. Biala,

21  Dr. Vea concluded that Plaintiff possessed sufficient ability to understand and remember simple

22  instructions, and that he had sufficient ability to carry out short instructions. AR 106. She also

23  determined that Plaintiff possessed sufficient ability to maintain socially appropriate behavior,

24  accept instructions and respond appropriately to criticism from supervisors, and interact

25  appropriately with the general public. AR 108. Dr. Vea also found that Plaintiff retained

26  sufficient ability to appropriately respond to changes in work setting. AR 108.

27  //

28  //

1    ALJ's Findings

2    _____The ALJ determined that Plaintiff had not engaged in substantial gainful activity since

3    June 11, 2005,[4]  the alleged onset date, and that Plaintiff  had the following severe impairments:

4    degenerative disc disease, degenerative joint disease, rheumatoid arthritis, gastroesophageal

5    reflux disorder ("GERD") and hypertension. AR 12-13.

6        The ALJ determined that Plaintiff retained the RFC to lift and carry fifty pounds

7    occasionally, and twenty-five pounds frequently, that Plaintiff could frequently sit, stand and/or

8    walk for six hours in an eight-hour day, and could occasionally stoop, kneel, or crouch. AR 14.

9        The ALJ further determined that Plaintiff's medically determinable impairments could

10   reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements

11   concerning the intensity, persistence and limiting effects of these symptoms were not entirely

12   credible. AR 17. The ALJ further noted the dearth of objective evidence of any impairment

13   which would significantly limit Plaintiff's ability to perform exertional activities. AR 18.

14       Based on the above review, the ALJ determined that Plaintiff was capable of performing

15   past relevant work as a taxi driver. AR 14. The ALJ commented that such work would not

16   require the performance of work-related activities precluded by Plaintiff's RFC. AR 13.

17                            **SCOPE OF REVIEW**

18       Congress has provided a limited scope of judicial review of the Commissioner's decision

19   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

20   the Court must determine whether the decision of the Commissioner is supported by substantial

21   evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

22   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

23   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

24   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

25   401.  The record as a whole must be considered, weighing both the evidence that supports and

26

27        [4] A prior ALJ determination was made on June 10, 2005, finding Plaintiff was not disabled. Since the prior
     decision had become administratively final, it was res judicata, and although Plaintiff alleged an onset date of August

28   1, 1997, ALJ Webster decided not to reconsider the period prior to June 10, 2005 in making his determination.
     Plaintiff has not contested this issue.

1   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

2   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

3   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

4   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

5   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

6   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

7   Cir. 1987).

8                                                   **<u>REVIEW</u>**

9           In order to qualify for benefits, a claimant must establish that he is unable to engage in

10  substantial gainful activity due to a medically determinable physical or mental impairment which

11  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

12  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

13  such severity that he is not only unable to do his previous work, but cannot, considering his age,

14  education, and work experience, engage in any other kind of substantial gainful work which

15  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

16  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

17  Cir. 1990).

18          In an effort to achieve uniformity of decisions, the Commissioner has promulgated

19  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

20  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ

21  found that Plaintiff: (1) has not engaged in substantial gainful activity since the alleged onset of

22  his disability; (2) has an impairment or a combination of impairments that is considered "severe"

23  based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an

24  impairment or combination of impairments which meets or equals one of the impairments set

25  forth in Appendix 1, Subpart P, Regulations No. 4; (4) can perform his past relevant work as a

26  taxi driver, and alternatively, (5) can perform a substantial number of jobs in the national

27  economy.   AR 14.

28

1   Here, Plaintiff argues that the ALJ's determination that Plaintiff suffers from a non-severe

2   mental impairment that imposes only mild mental limitations is not supported by substantial

3   evidence in the record.  Plaintiff specifically argues that the ALJ erred in summarily rejecting the

4   opinions of the examining as well as the nonexamining state agency physicians. Therefore,

5   Plaintiff contends that this Court should remand for further administrative proceedings.

6   **DISCUSSION**

7   A.   Severity of Mental Impairment

8   Plaintiff contends that the ALJ improperly rejected the medical opinion evidence of

9   record, and therefore erroneously concluded at step two of the five-step sequential evaluation,

10  that Plaintiff had no severe mental impairments. In doing so, Plaintiff argues that the ALJ

11  improperly rejected the medical opinions of the examining state agency psychiatrist, Dr. Shalts,

12  and the nonexamining state agency psychiatrists, Dr. Biala and Dr. Vea.

13  1.   The Law

14  Plaintiff bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111,

15  1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. A person is disabled if his impairments are severe

16  and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404.1520(a). A

17  severe impairment is one that significantly limits the physical or mental ability to perform basic

18  work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities include carrying out

19  simple instructions, responding appropriately to usual work situations, dealing with changes in a

20  routine work setting, and performing ordinary physical functions like walking and sitting. 20

21  C.F.R. § 404.1521(b).

22  At the second step of the sequential evaluation of disability, the ALJ determines whether

23  a claimant has a severe impairment or combination of impairments. A severe impairment is one

24  that significantly limits the claimant's physical or mental ability to do basic work activities. 20

25  C.F.R. § 1520(c). By definition, basic work activities are the abilities and aptitudes necessary to

26  do most jobs. In the absence of contrary evidence, it is reasonable to conclude that an individual

27  whose impairments do not preclude the performance of basic work activities is able to perform

28  his or her past relevant work. SSR 85-28.

1

2
　　　　　Examples of these are walking, standing, sitting, lifting, pushing, pulling,
reaching, carrying or handling, seeing, hearing, and speaking, understanding,

3
carrying out and remembering simple instructions, use of judgment, responding
appropriately to supervision, coworkers, and usual work situations, and dealing

4
with changes in a routine work setting. Thus, these basic work factors are inherent
in making a determination that an individual does not have a severe medical
impairment.

5

6
*Id*.

7
　　　　　An impairment or combination of impairments is found "not severe" and a
finding of "not disabled" is made at this step when medical evidence established

8
only a slight abnormality or a combination of slight abnormalities which would
have no more that a minimal effect on an individual's ability to work, even if the

9
individual's age, education, or work experience were specifically considered (i.e.,
the person's impairment(s) has no more than a minimal effect on his or her
physical or mental ability(ies) to perform basic work activities).

10

11
*Id*.

12
Within the Social Security Regulations, mental limitations are described as none, mild,

13
moderate, marked, and extreme. 20 C.F.R. §404.1520a(4)(d). The regulations hold that where

14
mental impairment imposes none or mild limitations it is non severe. 20 C.F.R.

15
§404.1520a(4)(d)(1). Mental impairments that impose moderate, marked, or extreme limitations

16
are therefore not considered non severe. Instead, they are severe. *Id*.

17
　　　To determine whether a plaintiff has a mental impairment, one must assess the

18
impairment according to the Regulations. 20 C.F.R. pt. 404, app. 1, subpt. P, § 112.05 (Listing

19
12.05). The listing of impairments outlines criteria that claimants must meet in order to be

20
determined impaired. *Id*. Listing 12.04 pertains to affective disorders.[5]

21
--------

22
[5] A. Medically documented persistence, either continuous or intermittent, of one of the following:
　　　1. Depressive syndrome characterized by at least four of the following:
　　　a. Anhedonia or pervasive loss of interest in almost all activities; or

23
　　　b. Appetite disturbance with change in weight; or
　　　c. Sleep disturbance; or

24
　　　d. Psychomotor agitation or retardation; or
　　　e. Decreased energy; or

25
　　　f. Feelings of guilt or worthlessness; or
　　　g. Difficulty concentrating or thinking; or

26
　　　h. Thoughts of suicide; or
　　　I. Hallucinations, delusions, or paranoid thinking; or

27
　　　2. Manic syndrome characterized by at least three of the following:
　　　a. Hyperactivity; or

28
　　　b. Pressure of speech; or
　　　c. Flight of ideas; or
　　　d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g.  Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

I. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g.  Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

1

2      A mental impairment must be established by medical evidence consisting of signs,

3  symptoms, and laboratory findings. 20 C.F.R. § 416.908. Symptoms are a claimant's own

4  description of his or her impairment, and alone are not enough to establish a mental impairment;

5  signs include observable psychological abnormalities and must be medically demonstrable

6  phenomena; laboratory findings must be shown through medically acceptable laboratory

7  techniques. 20 C.F.R. § 416.928. The regulations are clear that reports about a claimant's

8  impairments must come from "acceptable medical sources...." 20 C.F.R § 416.913(a).

9      2.   Analysis

10     Here, the ALJ considered whether Plaintiff's mental impairment was a severe impairment

11 and found as follows:

12              . . . The claimant's medically determinable mental impairment of
   depressive disorder does not cause more then minimal limitation to the claimant's
13 ability to perform basic mental work activities and is therefore non-severe. In
   making this finding, I have considered the four broad functional areas set out in
14 the disability regulations for evaluating mental disorders and in section 12.00C of
   the Listing of Impairments (20 CFR, Part 4, Subpart P, Appendix 1). These four
15 broad functional areas are known as the "paragraph B" criteria. There is no
   evidence that the claimant has any limitations in his activities of daily living or
16 social functioning. He has mild limitations in his ability to maintain concentration,
   persistence or pace. Additionally, there is no evidence the claimant has
17 experienced episodes of decompensation. Because the claimant's medically
   determinable mental impairment causes no more than "mild" limitation in any of
18 the first three functional areas and "no" limitation in the fourth area, it is
   nonsevere (20 CFR 404. 1520a(d)(1) and 416.921a(d)(1)).

19
   AR 13.
20

21
   _____

22              4. Repeated episodes of decompensation, each of extended duration;
         OR
23              C. Medically documented history of a chronic affective disorder of at least 2 years'
   duration that has caused more than a minimal limitation of ability to do basic work activities, with
24 symptoms or signs currently attenuated by medication or psychosocial support, and one of the
   following:
25              1. Repeated episodes of decompensation, each of extended duration; or
                2. A residual disease process that has resulted in such marginal adjustment that even a
26 minimal increase in mental demands or change in the environment would be predicted to cause the
   individual to decompensate; or
27              3. Current history of 1 or more years' inability to function outside a highly supportive
   living arrangement, with an indication of continued need for such an arrangement.
28

1    In reaching this conclusion, the ALJ took note of a comprehensive psychiatric evaluation

2    of Plaintiff performed by examining physician Dr. Shalts, who noted Plaintiff had a history of

3    depression and that he had some difficulty with social functioning, concentration, persistence and

4    pace. AR 342, 344-345. Dr. Shalts also diagnosed Plaintiff as suffering from a mood disorder

5    secondary to general medical condition. Based on her assessment, she assigned Plaintiff a GAF

6    score of 55. Dr. Shalts also opined that Plaintiff would be able to understand, remember, and

7    carry out simple instructions, and would be able to respond to coworkers, supervisors, the public,

8    and to usual work situations. AR 17, 349.

9        With specific regard to Dr. Shalts' opinion, the ALJ noted:

10       The claimant has also alleged that he is depressed. His treating notes show
     a repetition of a diagnosis of depression and an ongoing prescription for Lexapro.
11   However, the notes do not include observations of the claimant appearing
     depressed or what his symptoms might be. The claimant apparently has not
12   received psychiatric treatment. He told the consultative psychiatrist that he had
     trouble with his activities of daily living due to his physical problems, not mental
13   problems. He also told Dr. Shalts that he liked to be by himself, but this is
     inconsistent with other evidence, including his function report, showing that he
14   visits with others, phones others and goes to church on a regular basis.
     Additionally, there is insufficient evidence to find the claimant has more than
15   mild difficulty maintaining concentration, persistence or pace. There is no
     evidence that he has experienced episodes of decompensation. Since the claimant
16   does not have more than mild limitations in any domain, his depressive disorder is
     considered to be non-severe. I have not given significant weight to Dr. Shalts'
17   opinion that the claimant was limited to simple tasks because the treating record
     and the claimant's work activity do not support such a limitation.
18

19   AR 18-19

20       The ALJ also reviewed the findings of the nonexamining state agency psychiatrists, Dr.

21   Biala and Dr. Vea. Dr. Biala diagnosed Plaintiff with an affective disorder and also noted that

22   Plaintiff had mild restrictions on activities of daily living. AR 102. Dr. Biala also noted that

23   Plaintiff exhibited moderate difficulties in maintaining concentration, persistence or pace, and

24   that Plaintiff demonstrated sufficient ability to understand and remember simple instructions. AR

25   108. Dr. Biala also reported Plaintiff had sufficient ability to carry out short instructions, to

26   perform activities with directions without additional support and to maintain attention in two-

27   hour increments. AR 108.

28

Dr. Biala's overall findings were affirmed a year later by Dr. Vea. She reported that

although Plaintiff was moderately limited in his ability to understand and remember detailed

instructions, and in his ability to carry out detailed instructions, he was not significantly limited

in his ability to understand and remember very short and simple instructions. AR 106.

With regard to Dr. Biala and Dr. Vea's opinions, the ALJ noted:

> In April 2006, the State Agency found the claimant was capable of
> performing work at the medium level of exertion, indicating the claimant's
> subjective complaints were not adequately supported by the medical evidence.
> The State Agency further found the claimant was moderately limited in his ability
> to understand, remember and carry out detailed instructions. He was also able to
> interact appropriately with others and respond to changes in work settings. The
> State Agency reassessed the claimant in January 2007, and indicated he was able
> to perform medium work with occasional postural activities, including climbing,
> balancing, kneeling, crouching or crawling. I have given this opinion some weight
> with regard to the physical assessment as it is generally consistent with the totality
> of the record. However, I have not given controlling weight to the mental
> assessment given the dearth of evidence of psychiatric symptoms or treatment in
> the record.

AR 17.

In sum, the ALJ concluded that Plaintiff's medically determinable mental impairment of

depressive disorder did not cause more than minimal limitations to Plaintiff's ability to perform

basic mental work activities, and were therefore non-severe. The ALJ also found no evidence that

Plaintiff had any limitations in his activities of daily living or social functioning and found only

mild limitations in Plaintiff's ability to maintain concentration, persistence or pace. Therefore,

the ALJ determined that because Plaintiff's medically determinable mental impairment caused no

more than "mild" limitation in any of the first three functional areas and "no" limitation in the

fourth area, that it was non-severe.

B.    Evaluation of Medical Opinion Evidence

Plaintiff argues that the ALJ's findings that Plaintiff suffers from a non-severe mental

impairment that imposes only mild mental limitations is not supported by substantial evidence in

the record.  Plaintiff specifically argues that the ALJ erred in summarily rejecting the opinions of

the examining as well as the nonexamining state agency psychiatrists, all of whom reported that

Plaintiff suffered from moderate limitations which limited him to simple instruction work.

Plaintiff contends that the ALJ impermissibly dismissed the unanimous opinions of the

1   examining as well as non examining physicians, and impermissibly substituted his own lay

2   opinion for that of the medical professionals. Finally, Plaintiff argues that had the ALJ not

3   rejected the psychiatrists' opinions, he would not have found Plaintiff capable of performing his

4   past relevant work as a taxi driver-a vocation that demands more than an ability to perform

5   simple instruction work.

6       1.   The Law

7       Cases in the circuit distinguish among the opinions of three types of physicians: (1) those

8   who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

9   (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

10  physicians). As a general rule, more weight should be given to the opinion of a treating source

11  than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647

12  (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor,

13  it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391,

14  1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the

15  Commissioner may not reject this opinion without providing "specific and legitimate reasons"

16  supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499,

17  502 (9th Cir. 1983).

18      The opinion of an examining physician is, in turn, entitled to greater weight than the

19  opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  As

20  is the case with the opinion of a treating physician, the Commissioner must provide "clear and

21  convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*,

22  908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining physician,

23  even if contradicted by another physician, can only be rejected for specific and legitimate reasons

24  that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043

25  (9th Cir. 1995).

26      The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

27  that justifies the rejection of the opinion of either an examining physician or a treating physician.

28  *Pitzer*, 908 F.2d at 506 n. 4; *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). In some cases,

1   however, the ALJ may reject the testimony of an examining physician in favor of a non

2   examining physician when he gives specific, legitimate reasons for doing so, and those reasons

3   are supported by substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751-55

4   (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

5       2.   <u>Analysis</u>

6       Here, in rejecting the opinion of the examining physician, Dr. Shalts, the ALJ stated in his

7   decision that "the notes do not include observations of the claimant appearing depressed or what

8   his symptoms might be." AR 18. The ALJ also noted that Plaintiff had received no prior

9   psychiatric treatment. AR 18. He also placed great emphasis on Plaintiff's own statement that he

10  had trouble with his activities of daily living due to his physical problems, not mental problems.

11  AR 18. The ALJ also found that Plaintiff's work as an oilfield worker, subsequent to the date of

12  onset, militated against a finding of disability. AR 12. The ALJ also noted that Plaintiff's

13  statement, that he liked to be by himself, was inconsistent with other evidence including his

14  function report, showing that he visited with others and liked to go to church regularly. AR 18.

15  Therefore, the ALJ concluded that since Plaintiff did not have more than mild limitations, his

16  depressive disorder was considered to be non-severe. AR 18.

17      The ALJ similarly dismissed the findings of the two nonexamining state agency

18  psychiatrists, Dr. Biala and Dr. Vea, The ALJ claimed to have given these opinions some weight

19  with regard to the physical assessment, stating that the physical assessment was generally

20  consistent with the record as a whole. However, he declined to give controlling weight to the

21  mental assessments "given the dearth of evidence of psychiatric symptoms or treatment in the

22  record." AR 17.

23      Having summarily rejected the unanimous medical opinions of three psychiatrists, one

24  examining, and two nonexamining, the ALJ was required to articulate "clear and convincing"

25  reasons for rejecting the uncontradicted opinions. *Montijo v. Secretary of Health & Human*

26  *Services*, 729 F.2d 599, 601 (9th Cir. 1984). The ALJ is not bound by the uncontroverted

27  opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them

28

1  without presenting clear and convincing reasons for doing so. *Rhodes v. Schweiker*, 660 F.2d
2  722, 723 (9th Cir. 1981).

3      Here, the ALJ systematically rejected all three psychiatrists' opinions in favor of his own.
4  Even though Dr. Shalts, the examining physician, and Dr. Biala and Dr. Vea, the two
5  nonexamining physicians unanimously agreed that Plaintiff had some difficulty with
6  concentration, persistence and pace, and possessed the ability to understand and remember only
7  simple instructions, the ALJ unilaterally decided that Plaintiff's prior work activity and
8  Plaintiff's own statements contradicted such findings. The ALJ justified his rejection of the
9  nonexamining physicians' opinions by simply pointing to the "dearth of evidence of psychiatric
10 symptoms or treatment in the record." AR 17. Although the ALJ mentioned these opinions, he
11 did not set forth "clear and convincing" reasons for rejecting their uncontroverted conclusions.
12 On the contrary, the ALJ impermissibly supplanted his own opinion with those of three
13 concurring physicians. Clearly, he was not at liberty to do so. "The ALJ must set out in the record
14 his reasoning and the evidentiary support for his interpretation of the medical evidence." *Lester v.*
15 *Chater*, 81 F.3d at 832. "The ALJ must do more than offer his conclusions. He must set forth his
16 own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*,
17 849 F.2d 418, 421-22 (9th Cir. 1988). The ALJ is not allowed to use his own medical judgment
18 in lieu of that of a medical expert. *Gonzalez Perez v. Secretary of Health & Human Serv.*, 812
19 F.2d 747, 749 (1st Cir. 1987); *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992);
20 *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). An ALJ may not substitute his own
21 judgment for a physician's opinion without relying on other medical evidence or authority in the
22 record. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863,
23 870 (7th Cir. 2000).

24      Here, examination of the ALJ's reasons clearly demonstrate that they do not constitute the
25 clear and convincing reasons required to reject uncontroverted medical opinions. On the contrary,
26 the ALJ's reasons reflect that he substituted his own medical judgment for that of the
27 physicians'. Therefore, the ALJ's determination that Plaintiff did not suffer from severe mental
28 impairment is not supported by substantial evidence.

1   In general, it is the duty of the claimant to prove to the ALJ that he is disabled. 20 C.F.R.

2   § 404.1512(a). To this end, he must bring to the ALJ's attention everything that supports a

3   disability determination, including medical or other evidence relating to the alleged impairment

4   and its effect on her ability to work. *Id*. For his part, the ALJ has the responsibility to develop "a

5   complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical

6   reports." 20 C.F.R. § 404.1512(d). If this information fails to provide a sufficient basis for

7   making a disability determination, or the evidence conflicts to the extent that the ALJ cannot

8   reach a conclusion, he may seek additional evidence from other sources. 20 C.F.R. §§

9   404.1512(e); 404.1527(c)(3), see also *Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir. 2001).

10   It is unclear whether the ALJ rejected the physicians' opinions because the medical record

11   was ambiguous, inconsistent, or inadequate. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

12   2001) (holding that ALJs have a duty fully and fairly to develop the record when the evidence is

13   ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence). The ALJ

14   may discharge this duty in one of several ways, including subpoenaing claimant's doctors,

15   submitting questions to claimant's physicians, continuing the hearing, or keeping the record open

16   after the hearing to allow supplementation of the record. *Id*. Upon review, should the ALJ

17   determine that the record is inconsistent, ambiguous, or inadequate to allow for proper evaluation

18   of the evidence, a new psychiatric evaluation or other examination shall be ordered. The ALJ

19   shall reexamine step two of the sequential disability analysis in light of any new evidence and

20   this opinion, and shall complete the remaining sequential disability analysis accordingly.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**CONCLUSION**

2       Based on the foregoing, the Court finds that the ALJ's decision is not supported by

3   substantial evidence and is therefore REVERSED and REMANDED to the ALJ for further

4   proceedings consistent with this opinion. The clerk of this Court is DIRECTED to enter

5   judgment in favor of Plaintiff Ronnie L. Greasham and against Defendant Michael J. Astrue,

6   Commissioner of Social Security.

7

8

9

10

11      IT IS SO ORDERED.

12  **Dated:**    **November 5, 2009**            _____ **/s/ Gary S. Austin** _____
                                            UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28